## HUTSELL v. COMMONWEALTH.

Court of Appeals of Kentucky.

Nov. 16, 1951.

Shackelford & Burnam, Richmond, for appellant.

A. E. Funk, Atty. Gen., Walter C. Herdman, Asst. Atty. Gen., for appellee.

SIMS, Justice.

Appellant, Willa Mae Hutsell, was sentenced to the penitentiary for one year for violating KRS 436.030, which makes it a felony for a woman to conceal the birth of a bastard child so that it may not be known whether the child was born alive. Three grounds are assigned for reversal: 1. A verdict should have been directed in her behalf; 2. incompetent evidence was admitted over her objection; 3. the court failed to instruct on the whole law of the case.

There is practically no conflict in the evidence. The Commonwealth's proof

shows that appellant, an unmarried colored girl, lived in the home of her mother, Edna Ransom, in Richmond, and about 5:30 in the morning of April 10, 1950, gave birth to a stillborn, illegitimate baby; that she put the body in a bucket in the kitchen until that night, when she buried it in the back yard of her home. Some dogs scratched up the body and appellant later took it to a neighboring rock quarry and threw it into a pool of water.

Willa Mae testified no one helped her deliver the baby; that it was born dead and she disposed of the child as above indicated. She was corroborated by her mother that the baby was born dead.

In urging she was entitled to a directed verdict, appellant argues her mother knew of the birth of the child, therefore it was not a concealed birth, citing Bays v. Commonwealth, 289 Ky. 116, 158 S.W.2d 158. The facts in the Bays case distinguish it from the one at bar. There, accused informed a woman from whom she was renting a room that she was in labor and requested her to call a doctor. An unsuccessful attempt was made to get a doctor before the baby was born, as well as thereafter. Furthermore, accused there testified the baby was alive when born but only lived about fifteen minutes. Four women knew of the birth of the Bays baby and no attempt was made to keep it secret, although after the baby died a secret disposition was made of its body.

■■■ In the instant case nobody but appellant and her mother knew of the birth, both of whom testified it was a stillbirth, and no effort was made to get a doctor. It was for the jury to determine if appellant feloniously concealed the birth of the child. The body was first placed in a bucket, then buried secretly at night and after dogs dug up the body, it was secretly thrown into the quarry pool. As said in the Bays opinion, the gravamen of the crime denounced by the statute is the concealment of the birth, and here there was sufficient evidence to submit that question to the jury and to sustain the verdict of conviction.

On cross-examination the attorney representing the Commonwealth, after appellant testified she had never been married, asked her, "What living children, if any, do you have?" Her counsel's objection to the question was overruled, and she answered, "I have one". She was then asked the name of the child, which she gave. Thereupon, she was asked, "And one living child is all you have?" The prosecuting attorney did not stop there but asked, "Where is the child that you have living"? The court sustained an objection to this question but overruled her motion to set aside the swearing of the jury.

■■■ Prejudicial error was committed when the court admitted the incompetent evidence that she had previously given birth to an illegitimate child. The learned Assistant Attorney General who briefed the case for the Commonwealth conceded this evidence was not competent, but argued it was not prejudicial. This unfortunate girl had just admitted she had never been married and when the prosecuting attorney forced her to say that previous to this occasion she had given birth to an illegitimate child, this proved her to have been guilty of the misdemeanor of fornication, an altogether different offence from the one for which she was on trial. Such evidence was not competent for the purpose of impeaching appellant or discrediting her as a witness, as § 597 of the Civil Code of Practice (which is applicable in criminal cases) provides specific wrongful acts, other than conviction of a felony, may not be introduced. Day v. Commonwealth, 256 Ky. 76, 75 S.W.2d 741, and authorities therein cited.

Several witnesses had testified appellant had never been married and she had so stated just previous to the questions asked concerning her giving birth to another bastard child, and the only purpose of this improper question was to prejudice her before the jury by forcing this damaging admission. The court must have realized his error in admitting this evidence because he refused to let the prosecuting attorney pursue the question further as to where the illegitimate child was living. Furthermore, this incompetent and highly prejudicial testimony was stressed in argument for the Commonwealth, as is shown in the bill

of exceptions. For the error in admitting this testimony, the judgment is reversed.

We find no merit in appellant's contention she was entitled to an instruction that if at the time she was so ill as to be unconscious or unaware of what she was doing and had no knowledge of it, she should be acquitted on the ground of lack of intention to commit the crime. True, such an instruction was approved in Perry v. Commonwealth, 295 Ky. 317, 174 S.W. 2d 422, but the facts there were quite different from those here. In that case accused testified she remembered going to the kitchen of her home about 2 o'clock in the morning but did not remember anything occurring thereafter until she regained consciousness in the hospital the following day. Here, appellant testified clearly and intelligently as to giving birth to the baby unaided, of putting it in a bucket that morning, then of burying it after dark that evening and later of throwing it into the pool in the rock quarry. While she said, "I don't remember hardly anything, I was too sick", her other testimony refutes this statement and clearly shows she knew what she was doing.

The judgment is reversed for proceedings consistent with this opinion.